**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| VERNELL MAYS, ) | |
| ) | CASE NO. 1:13-CV-191 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Vernell Mays ("Mays") challenges the final decision of the Acting Commissioner of Social Security, Carolyn Colvin ("Commissioner"), denying Mays's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On July 22, 2010, Mays filed an application for SSI alleging a disability onset date of February 1, 2008. (Tr. 10.) His application was denied both initially and upon reconsideration. Mays timely requested an administrative hearing.

On August 5, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Mays, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 10.)  On September 22, 2011, the ALJ found Mays was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 19-20.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age forty-four at the time of his alleged onset date, Mays was a "younger" person under social security regulations.  *See* 20 C.F.R. § 416.963(c).  (Tr. 18.)  Mays has a high school education and past relevant work as an office cleaner.

*Hearing Testimony*

At the hearing, Mays testified to the following:

- He lives by himself and takes cares of himself to the best of his ability.  He does his own cooking and cleaning.  (Tr. 35.)

- He was planning on attending Cleveland State University later in the month taking fourteen credit hours, and had previously participated in a work study program at Cuyahoga County Community College attending full-time.  (Tr. 36-38.)  He received his associate's degree from the latter.  (Tr. 50.)

- He had surgery earlier in the year to remove rectal polyps.  (Tr. 38.)

- He has experienced pain in his lower back on an ongoing basis since the early 1990s stemming from a work-related injury.  (Tr. 38-39.)  He has not had treatment for his back since 2008.  (Tr. 39-40.)   His back was treated with medication and therapy, but he never underwent surgery as he was told there was a fifty/fifty chance he may not be able to walk afterwards.  (Tr. 39.)

- His pain is constant, but varies in intensity.  He cannot dance or play basketball anymore.  His ability to lift/carry is also affected.  He thinks he can carry 25 pounds, but not repetitively.  (Tr. 41.)  He can walk 300 to 400 yards before needing to stop and rest.  He could continue onwards for another 300 yards after

2

>   resting, but could not do so indefinitely. (Tr. 42.)
>
> • He thinks he can stand in one place for thirty minutes before needing to change positions. (Tr. 42.)
>
> • He does not know of any restrictions in his ability to use his hands and/or arms to reach, push or pull. However, he did recently notice he had difficultly holding his arms over his head while showering. (Tr. 44.)
>
> • He believes he has restrictions on his ability to bend and stoop, but can bend forward to pick up a small object from the floor. He has difficulty kneeling straightforward. He can crawl. (Tr. 44.)
>
> • He has not had any recent psychological treatment, but has in the past. (Tr. 45.) He is uncomfortable being out in public and fears people do not like him. Though people are friendly at first, they treat him differently after finding out he has been to prison. (Tr. 46.) This causes him to feel depressed. (Tr. 46-47.) He has friends, but they do not visit him. (Tr. 47.)
>
> • He has had several jobs since being released from prison, including cleaning offices and three days as a packager. (Tr. 53-54.) He could not keep up with the quotas at the latter position. *Id*.
>
> The ALJ posed the following hypothetical question to the VE:
>
> I want to ask you about a hypothetical individual of the same age, education, and past work experience as an office cleaner as the claimant. This hypothetical individual has further limitations – rather, has limitations of the following: This person can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently with no limits on sitting, standing, or walking; this person cannot perform overhead reaching; this person is further limited to simple, routine work that does not involve arbitration, negotiation, or confrontation; work that does not involve directing the work of others or being responsible for the safety or welfare of others. This person is further limited to only superficial interaction with supervisors, coworkers, and the general public. Finally, the person is precluded from work requiring high production quotas or strict time standards.

(Tr. 59-60.)

The VE testified that such an individual would be unable to perform Mays's past relevant work solely due to the prohibition against overhead reaching. (Tr. 61.) However, the VE identified the following jobs as examples that the hypothetical individual could perform: cashier

3

II, Dictionary of Occupational Titles ("DOT") § 211.462-010; mail clerk, DOT § 209.687-026; and, sales attendant, DOT § 299.677-010.  (Tr. 61-63.)

The ALJ then asked a second hypothetical modifying the first one as follows: "only occasional interaction with supervisors and co-workers and no interaction with the general public."  (Tr. 63.)  The VE testified that such an individual could not perform the aforementioned cashier or sales attendant jobs, but could still perform the job of a mail clerk.  *Id*.  The VE also identified the additional job of marker, DOT § 209.587-034.  (Tr. 65.)  In response to a third hypothetical propounded by the ALJ, the VE testified that an individual off task twenty percent of the time would be unemployable.  *Id*.

### III.  Standard for Disability

A disabled claimant may be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.  The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.

For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Mays established medically determinable, severe impairments, due to obesity, degenerative disc disease, post-traumatic stress disorder, and adjustment disorder with mixed anxiety and depressed mood. (Tr. 12.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 12-15.) Mays was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 15-18.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Mays was not disabled. (Tr. 18-20.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v.*

*Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996);

*accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Mays claims the ALJ erred by: (1) failing to adequately develop the record by not ordering a psychological or psychiatric consultative examination; (2) failing to consider the effects of his sleep apnea on his ability to work; (3) misinterpreting the testimony of the VE; and, (4) failing to accept any limitations on Mays's ability to sit, stand or walk. (ECF No. 17.)

*Consultative Examination*

Mays asserts that a remand is necessary because the ALJ did not order a psychological or psychiatric consultative examination in violation of 20 C.F.R. § 404.1503(e). (ECF No. 17 at 14.) Mays misconstrues the requirements of 20 C.F.R. § 404.903(e).[1] It states that "in any case where there is evidence which indicates the existence of a mental impairment," an initial determination "will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable [RFC] assessment." *Id*. As pointed out by the Commissioner, prior to the initial determination level, the medical evidence of record was reviewed by Cindy Matyi, Ph.D., who

---

[1] The Court will refer to the largely identical provision governing SSI applications – 20 C.F.R. § 416.903(e) – as Mays seeks SSI benefits rather than POD and DIB.

also completed an evaluation of Mays's mental RFC.[2] (Tr. 74-75, 77-79.) Furthermore, at the reconsideration level, Paul Tangeman, Ph.D., reviewed the medical evidence and evaluated Mays's mental RFC. (Tr. 85-86, 88-90.) Dr. Tangeman reconsidered and affirmed Dr. Matyi's mental RFC. *Id*. Therefore, Mays's contention that the Commissioner did not comply with 20 C.F.R. § 416.903(e) is without merit.

While Mays argues that the ALJ was remiss in his duty to develop the record, in the Sixth Circuit, it is well established that Mays as the plaintiff – and not the ALJ – has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y. of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part

---

[2] Dr. Matyi found that Mays was either "not significantly limited" or no more than "moderately limited" in all areas of mental functioning. (Tr. 77-79.) She opined that Mays was "able to comprehend, remember, and carry out simple to moderately complex task instructions. Can maintain attention and make simple decisions. Would do best in setting that entails minimal interaction, but can relate adequately on a superficial basis. Clt can adapt to a routine, predictable setting which does not involve strict time limitations or productions standards." (Tr. 79.)

8

of the record and was the basis of the initial decision to deny benefits). However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 Fed. Appx. at 459 (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

Here, Mays was represented by counsel at the hearing and, therefore, the ALJ had no heightened duty. Furthermore, "an ALJ is not required to refer a claimant for a consultative examination unless the record establishes that such an examination 'is necessary to enable the administrative law judge to make the disability decision.'" *Williams v. Astrue*, 1:11-CV-2569, 2012 WL 3586962 (N.D. Ohio Aug. 20, 2012) (*quoting Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir.1986)). Pursuant to 20 C.F.R. § 416.919a(b), a consultative examination may be purchased "to try and resolve an inconsistency or when the evidence as a whole is insufficient to support a determination or decision ..." However, "[t]he plain language of the statute clearly places the decision to order a consultative examination within the discretion of the ALJ." *Evans v. Astrue*, 3:10-CV-67, 2010 WL 5488525 (E.D. Tenn. Nov. 22, 2010), report and recommendation adopted, 3:10-CV-67, 2011 WL 13453 (E.D. Tenn. Jan. 4, 2011); *see also Lucas v. Comm'r of Soc. Sec.*, 1:11 CV 2497, 2013 WL 1150019 (N.D. Ohio Mar. 19, 2013) ("Ordering a consultive exam lies in the discretion of the ALJ."); *Cyrus v. Astrue*, 1:11-CV-234, 2012 WL 2601495 (S.D. Ohio July 5, 2012) ("Whether or not to order a consultative examination is a discretionary decision made by an ALJ upon a finding that the record is not sufficiently developed to evaluate a claim."), report and recommendation adopted, 1:11CV234, 2012 WL 3113224 (S.D. Ohio July 31, 2012); *Lockett v. Comm'r of Soc. Sec.*,

11-13709, 2012 WL 3759037 (E.D. Mich. Aug. 1, 2012) ("The determination to order a consultative examination or diagnostic testing is entirely discretionary..."), report and recommendation adopted, 11-13709, 2012 WL 3731772 (E.D. Mich. Aug. 29, 2012).

Because Mays has not demonstrated that the record was insufficiently developed to make a disability determination, the ALJ did not abuse his discretion by failing to order a psychological consultative examination.

*Impact of Sleep Apnea*

Mays argues that the ALJ did not follow Social Security Ruling ("S.S.R.") 02-1p, in evaluating the effects of his obesity. (ECF No. 17 at 15.) However, reading the claimant's argument as a whole, the real issue raised by Mays is that the ALJ allegedly failed to review a sleep study conducted on July 11, 2011, which resulted in a diagnosis of severe obstructive sleep apnea (Tr. 336), an impairment that Mays contends stems from his obesity. (ECF No. 17 at 15.) The Commissioner asserts that Mays has failed to identify any functional limitations resulting from his sleep apnea that were unaccounted for by the ALJ in the RFC determination. (ECF No. 20 at 9-10.) In addition the Commissioner avers that any limitations related to sleep apnea that were not incorporated into the RFC would have had no impact on the jobs identified by the VE. *Id*.

Although the Social Security Rules no longer contain a separate listing for obesity, *see Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643-644 (6th Cir. 2006), the listings contain the following mandate:

> . . . when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claimant at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, **adjudicator's** [sic] **must consider any additional and**

10

> **cumulative effects of obesity**." Listing 1.00Q (emphasis added), 20 C.F.R. Part 404, Subpart P, Appendix 1. Moreover, the Regulations "require the agency to consider the combined effect of all of the claimant's ailments, regardless of whether any such impairment, if considered separately, would be of sufficient severity." *Clifford v. Apfel,* 227 F.3d 863, 873 (7th Cir. 2000).

*Besecker v. Astrue*, 2008 WL 4000911, *5 (S.D. Ohio Aug. 29, 2008).

S.S.R. 02-1p reinforces the Regulations' mandate regarding obesity, in pertinent part, as follows:

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus--even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea. It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments. Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity or slowed reactions that may result from obesity-related sleep apnea.

S.S.R. 02-1p at *3. In addition, the Ruling recognizes that a claimant's obesity could affect his exertional limitations and must be considered at steps four and five as follows:

> Obesity can cause limitations of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the external functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain

> a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. [footnote omitted] In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

S.S.R. 02-01p at *6; *see also Besecker v. Astrue*, 2008 WL 4000911, at *5-6 (S.D. Ohio Aug. 29, 2008) ("repeated references to Plaintiff's obesity in the record, including the opinions of several medical sources, should have alerted the ALJ to consider Plaintiff's obesity and its combined impact with his other impairments at Steps 2, 3 and 4 of the sequential evaluation."). The Ruling also cautions: "[h]owever, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." S.S.R. 02-1p at *6. Nonetheless, it is "a mischaracterization to suggest that Social Security R[egulation] 02-1p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 Fed Appx. 408, 412 (6th Cir. 2006). Put simply, this is more than a requirement that the ALJ mention the fact of obesity in passing: "courts . . . remand[] even for a mere failure to consider obesity." *Macaulay v. Astrue*, 262 F.R.D. 381, 390 (D. Vt. 2009) (citations omitted); *see also Johnson v. Astrue*, Case No. 08-3658, 2010 WL 148411, *18 (S.D. Tex. Jan. 11, 2010) ("[T]he ALJ should develop the record on the issue of

[the claimant's] obesity and how her obesity impacted her ability to function and work. . . ."); *Priestly v. Astrue*, 2009 WL 1457152, *13-14, Case No 6:08-546 (D.S.C. May 22, 2009) ("while the ALJ stated he considered the plaintiff's obesity when determining her RFC, he failed to provide any explanation as to how this severe impairment factored into his assessment.")

While Mays claims the ALJ "apparently did not review the sleep study," (ECF No. 17 at 15), the ALJ specifically noted that Mays suffered obstructive sleep apnea, as he listed it among Mays's non-severe impairments. (Tr. 12.) The ALJ also addressed the impact of Mays's obesity, which the ALJ did categorize as "severe," as follows:

> In reaching the conclusion that the claimant's impairments do not rise to Listing level, I also considered the effect his obesity has on his other impairments and on his ability to perform routine movement and necessary physical activity within the work environment. I also considered how his obesity may cause fatigue that would affect his ability to function physically pursuant to Social Security Ruling 02-01p. Because the physical examinations contained in the record were mostly unremarkable, I do not find the claimant's obesity either singularly or in combination with his other medically determinable severe impairments results in limitations greater than those assessed in this opinion.

(Tr. 14-15.)

Mays points to a recommendation after the July 2011 sleep study that "[u]ntil the patient's sleep symptoms are controlled, recommend Cautious Driving & operation of Heavy Machinery. Also, the patient should avoid situations which may put themselves or others at risk, due to drowsiness or lack of alertness."[3] (Tr. 337.) As pointed out by the Commissioner, the RFC assessment included limitations to simple, routine work that does not involve "directing the work

---

[3] It bears noting that Mays did not submit Exhibit 5F, which contains the sleep study results and ensuing recommendations until August 10, 2011 – several days *after* the hearing. (Tr. 298.) At the hearing, Mays's counsel acknowledged that the exhibits of record included Exhibits 1A through 4A, 1B through 12B, 1D through 4D, 1E through 10E, and 1F through 4F. (Tr. 32.)

of others, or being responsible for the safety of others." (ECF No. 20 at 9, citing Tr. 15.) The Commissioner avers that this limitation is consistent with and encompasses the aforementioned recommendation. The Court agrees that the operation of vehicles and/or heavy machinery could make Mays *de facto* responsible for the safety of others and, therefore, put such jobs outside of the RFC. Tellingly, the jobs identified by the VE in response to the hypothetical that mirrored the ultimate RFC did not require driving or the operation of heavy machinery. (Tr. 19.) The VE identified the following jobs as examples that the hypothetical individual could perform: cashier II, Dictionary of Occupational Titles ("DOT") § 211.462-010, 1991 WL 671840; mail clerk, DOT § 209.687-026, 1991 WL 671813; and, sales attendant, DOT § 299.677-010, 1991 WL 672643. (Tr. 61-63.)

Moreover, while Mays treats the physician's recommendation as a prohibition against the operation of vehicles or heavy machinery, it bears noting that the recommendation only states that Mays should use "caution" when doing so. (Tr. 337.) Because Mays's physician did not set out that a prohibition was necessary, there is simply no basis for Mays to argue that the ALJ erred by not including an express prohibition against the operation of vehicles or heavy machinery. Additionally, the ALJ makes specific mention of the fact that Mays himself stated that he gets around by driving a car and can do so without supervision. (Tr. 16, 177.)

The ALJ properly considered the effects of his obesity, including sleep apnea, when determining Mays's RFC.

*VE Testimony*

Mays asserts that the ALJ either misstated or misinterpreted the testimony of the VE. (ECF No. 17 at 15-17.) Therefore, Mays argues, the ALJ could not properly rely upon VE

14

testimony. *Id*. Mays's argument on this point is not altogether clear.

 The ALJ found that Mays had the following functional capacity:

> [C]laimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except that claimant cannot reach overhead and is limited to performing simple, routine work that does not involve arbitration, negotiation, or confrontation, directing the work of others, or being responsible for the safety or welfare of others. Additionally, the claimant can have no more than superficial interaction with supervisors, coworkers, and the general public. Lastly, the claimant cannot perform work with high production quotas or strict time standards.

(Tr. 15.)

 A review of the hearing transcript reveals that the first hypothetical posed to the VE is incorporated in substance, if not form, in the above RFC. (Tr. 59-60.) The VE testified that such an individual could perform the jobs of a cashier II, mail clerk, and sales attendant. (Tr. 61-63.) The second hypothetical limited the individual to only "occasional" rather than "superficial" interaction with supervisors and co-workers and "no" interaction with the general public. (Tr. 63.) The VE testified that such an individual could not perform the cashier or sales attendant jobs, but could still perform the job of a mail clerk.[4] *Id*. The VE explained that the first two jobs required at least occasional, or even frequent, interaction with the general public. *Id*. Mays assumes, without any explanation, that the VE's testimony with respect to the first hypothetical is undermined by her response to the second. The Court disagrees. The term "superficial" as used in this context and as understood in common parlance, does ***not*** refer to the *quantity* of social interaction. Typically, the terms "frequently," "occasionally," and "rarely/never" are typically used in social security cases to described the *quantity* of interaction. "Superficial"

---

[4] Notably, the VE did testify that such an individual could also perform the job of a marker, indicating that there were 2,500 such jobs locally, 13,000 in Ohio, and 338,700 nationally. (Tr. 65.)

15

rather refers to the *quality* or *character* of social interaction.  As such, the Court sees no inconsistency in the VE's testimony requiring clarification.  Mays has pointed to no law, regulation, or decision suggesting otherwise.  As such, his assignment of error is devoid of merit.

***Sitting, Standing and Walking***

In his last assignment of error, Mays avers that the ALJ found that the Plaintiff could perform a reduced range of light work, and apparently did not accept any limitations in sitting, standing or walking.

Light work "requires a good deal of walking or standing, or when it involves sitting most of the time...some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  Heavy work requires six hours of standing or walking in a workday.  Social Security Ruling ("SSR") 83-10.  Sedentary work requires no more than two hours of standing or walking in a workday.  SSR 83-10.  Thus, it appears that light work requires between two to six hours of standing and walking in a workday.  Mays argues that the opinion of consultative examiner, Kimberly Togliatti-Trickett, M.D., was inconsistent with light work.  (ECF No. 17 at 17.)  Dr. Togliatti-Trickett opined that Mays "should be able to stand and walk for at least 4-5 hours throughout the day.  There should be no problem with sitting."  (Tr. 356-57.)  Because Dr. Togliatti-Trickett's opinion speaks in terms of minimum ability rather than maximum ability, it is not inherently inconsistent with the requirements of light work.  Nonetheless, the ALJ explicitly gave little weight to this portion of her opinion, explaining that "there is nothing in the evidence that establishes any greater limitation in this area than I have assessed within.  Further, the fact that the claimant has attended school and has looked for work suggests he is not limited with standing and walking to the degree Dr. Togliatti-Trickett stated."  (Tr. 18.)

The ALJ adequately explained the weight he ascribed to the opinion of a non-treating physician. Mays asserts that the ALJ improperly rejected this portion of Dr. Togliatti-Trickett's opinion without citing other medical evidence to the contrary. (ECF No. 17 at 17.) While Step Four of the sequential process requires the ALJ to determine a claimant's RFC, "[a] disability claimant has the burden to establish [his or] her RFC." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citations omitted); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388 (6th Cir. 1999) (finding that the burden does not shift to the Commissioner to prove a claimant's RFC even after the burden of proof shifts to the Commissioner at step five of the disability analysis); *accord Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 568 (6th Cir. 2009) (claimant bears the burden to provide the evidence for the RFC calculation). It is Mays's burden to demonstrate the severity and extent of his functional impairments. The ALJ found that there is not sufficient evidence of record to justify standing/walking requirements that would limit Mays to less than six hours in an eight hour workday. Furthermore, Mays has not argued that substantial evidence of record capable of supporting the ALJ's finding that he could perform the standing/walking requirements of light work (*i.e.* up to six hours of standing) is absent. Indeed, such an argument, even if raised, would be meritless. State Agency physicians Esberdado Villanueva, M.D., and James Gahman, M.D., both opined that Mays could sit for six hours in an 8-hour workday. (Tr. 76, 87.) As such, it cannot reasonably be argued that the ALJ's determination lacked the support of substantial evidence.

As such, the final assignment of error is without merit.

**VII. Decision**

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: October 28, 2013